## Commercial Bank of Manchester. *v.* The Coroner of Yazoo county.

It seems that if the judgment is erroneous on its face, it will be reversed, although the bill of exceptions may be defective.

A younger judgment creditor has a right to sell property under his judgment; but the purchaser will take with notice and subject to the prior lien.

Inasmuch as the younger judgment creditor has a right to enforce his judgment, he will be entitled to whatever is made, even as against the eldest judgment creditor, whose remedy is confined to his lien upon the property.

If the officer levy all the executions in his hands at the same time upon the same property, then the court may appropriate the money according to the age of the judg·ments.

IN ERROR from the circuit court of the county of Yazoo.

Trial before the Hon. M. L. FITCH, at the November Term, 1840.

This was a motion in the court below to appropriate money to the satisfaction of elder judgments, which had been made on execution sale under a judgment younger in date. The motion was sustained, and writ of error taken to this court.

Several judgments were rendered in the circuit court of Yazoo county, at the suits of different plaintiffs, against James Buford and others. The judgments were rendered on different days, and some of them at different terms of the court. That in favor of the Commercial Bank, the plaintiff in error, was rendered on the 29th day of May, 1839, and was the youngest judgment. On this judgment execution emanated the 29th day of July, 1839, directed to the coroner of the county, according to the statute, the said Buford being sheriff of the county. It was levied on the 10th day of November, 1839, on property which was afterwards sold by the

coroner, and money made to the amount of thirty-eight hundred dollars, which was the subject of this motion.

It appeared that executions were regularly issued on the other judgments, which were older than that of the plaintiff's in error. The various executions and forthcoming bonds in the cases were not set out in the bill of exceptions itself, but were referred to by it as "exhibits marked A, B, C," &c. and attached to the record; but were not treated as a part of the record by this court.

Several of the executions from the elder judgments were directed to the sheriff, and on the 15th of November, 1839, by him levied upon the property previously levied upon by the coroner. The coroner sold the property and returned a *part* satisfaction of the judgment, and that there was a sum still remaining in his hands which was claimed by the sheriff under older executions. The return of the sheriff was, that *the property had been sold by the coroner, but still remained in his hands to be appropriated by the court.*

The judgment of the court below was in the following words: "This day the motion came on to be heard, and the said James Biles (the coroner) having brought into court the sum of thirty-eight hundred dollars, which he had made by virtue of a levy and sale under a writ of *venditioni exponas,* at the suit of the Commercial Bank of Manchester against James Buford and others, and there appearing to be various claimants of the said money, upon different executions, emanating upon different judgments and at different times; and the court having fully considered said motion, doth order and adjudge that the aforesaid sum of money be applied in satisfaction of the executions under which it is claimed, according to the priority of the judgments upon which they issued," &c. To which judgment the plaintiff in error excepted.

Wilkinson and Miles for plaintiff in error.

We contend that the Commercial Bank of Manchester is entitled to it; first—under the decisions of our own courts. Burney *v.* Boyet, and Smith & Pickett *v.* Ship, 1 How. 40, 234, are cases bearing upon this. In the first of these cases it is said by the court, "By the *levy* the property is *changed;* the execution of the appellee was not instrumental in producing the money by the sale

of the property, and he cannot claim to have it appropriated to the payment of his demand;" and the court fully recognizes the principle that a prior levy and sale gives the party levying a preference in his right to satisfaction; and the judgments in favor of the adverse claimants in that case having been rendered on the same day, the court refuse to inquire into the fact of priority. Yet in the last case they do inquire into the fact of priority, although the judgments (as in the first case) were both rendered on the same day, and they give the money to the first judgment creditor. The apparent inconsistency in the two decisions can only be reconciled upon the ground that, in the last case, the executions were both equally instrumental in producing the money, they having been issued and proceeded under at the same time; and this is the ground expressly taken by the court. It is clear that the first of these decisions must be wrong, unless the court intends to recognize the principle that a levy under an execution is a complete investiture of the property, and that a *sale* under it gives a plaintiff in the execution a right to the proceeds. The view we take is fully sustained by the court in another case decided by it; the case of J. J. Michie *v.* the Planters' Bank, not yet reported.

The principle contended for is this: that, notwithstanding the lien of a judgment in this state, or of an execution elsewhere, the property is not divested from the defendant till execution executed; and that if a subsequent execution comes into the sheriff's hands, and he levies that first, and proceeds to *sell* under it, that the plaintiff in the junior execution is entitled to his money, and the remedy of the plaintiff in the first execution is not against the plaintiff in the second, but against the officer. See Bac. Ab., Sheriff, note 5; 1 Term R. 751; 4 East, 523. In the case at bar the levy of the coroner was made five days before the levies of the sheriff, and the *sale* took place under the execution which was first levied.

The remedy of the defendants in error is plainly against the sheriff, if they have been injured through his neglect; and it is *possible* (though it has not been so decided) that they might pursue the property sold in the hands of the present owner; but they cannot intercept that fund in the hands of the coroner. Even if *all* the levies had been made by the *sheriff*, and the *sale* made

under the first levy by *him,* the plaintiff in the execution first levied would (according to the authorities) be entitled to the money. Here the first levy and the sale under it were not made by the sheriff; and although the deputy sheriff, who returned the writs of venditioni exponas, and the coroner who sold, happen to be the same person, yet they are different officers of the law. So far as the execution of process in civil actions, they are antagonistical in their sphere of duties, and it is decided in the case of Hagan *v.* Lucas, 10 Pet. 403, "that property once levied on is not liable to be taken on another execution in the hands of a different officer." See also Jones *v.* Judson, 4 Dev. & Bat. Rep. 456.

Michie for defendant in error.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

It appears by the record in this case, that twelve executions were placed in the hands of the coroner, and by a levy and sale under one of them, he received the sum of thirty eight hundred dollars. The several executions are not set out at length in the bill of exceptions, and therefore constitute no part of the record, and still if the judgment is erroneous on its face it must be reversed.

It appears by the recital to the judgment, that the money was made by a levy and sale under the plaintiff's execution, but instead of adjudging it to the plaintiffs, the court ordered the money to be distributed amongst the several claimants, according to the priority of judgments on which the executions had issued. To this the plaintiffs excepted.

The question here presented was virtually settled by the decision at the present term in the case of Thomas Andrews *v.* Doe *ex dem.* Wilkes, in which case it was held, that a prior judgment lien is entitled to priority of satisfaction, and that a sale under a junior judgment does not divest the lien of the elder. A younger judgment creditor has a right to sell, but he sells subject to the prior lien, and he sells nothing but an incumbered property. As he does not interfere with the prior lien, he is of course entitled to whatever his execution may bring. Having a right to sell, he is entitled to the fruits of that sale. The older lien is always pro-

tected without the aid of the court. Purchasers buy with a view to it, and it is scarcely presumable that they will give more than the worth of an incumbered estate; and why divest the younger judgment creditor of the product of that which he has a right to sell, and apply it to the extinguishment of a lien which is not affected in any way by the sale? Wherever the law protects the sheriff's vendee who buys under a junior lien, it also protects the prior lien by appropriating the money to its extinguishment; and it is on this principle alone that such interposition can be justified. But here we have seen that the law does not protect the purchaser under a junior judgment; he is a purchaser with notice, and takes subject to the prior lien, hence the reason for such an appropriation of money by the court fails. It would be a folly to say that the younger judgment creditor has a right to sell, but that he is not entitled to the fruits of that sale when it injures no one. If the elder liens were thereby divested, then there would be a propriety in satisfying them in their order of priority, as far as the money would do so, but they are not divested nor disturbed. The proposition is undoubtedly clear, that a junior judgment creditor may levy on property which is incumbered by an elder judgment. For what purpose may he sell? Is it merely for the purpose of aiding the elder judgment, by having the proceeds applied to extinguish it? If this be all, the proceeds of property which was liable to be sold under his execution, would not be liable to the satisfaction of that execution. What signifies the naked power to sell, without any power of the proceeds.

The language of Judge Story, in the case of *Conrad v.* The Atlantic Insurance company, 1 Peters, 443, will illustrate this position. He says, that a general lien on land by judgment does not *per se* constitute a right of property, but it confers a right to levy to the exclusion of adverse interests subsequently acquired; and when the levy is made, the title relates back to the judgment, and cuts out intermediate incumbrances. Subject to this, the debtor has power to sell, or "it may be levied upon by any other creditor, who is entitled to hold it against every other person except such judgment creditor, and even against him unless he consummates his title by a levy on the land under the judgment. In that event

the prior levy is as to him void, and the creditor loses all right under it."

If this be the law, it presents two important questions. If under the junior judgment a levy and sale may be made which will hold the property even against the elder judgment, unless it be consummated, how can the proceeds of such sale be applied to an unexecuted lien? Suppose the plaintiff should become the purchaser at the sale under his junior lien, which he has a right to do, without payment of money if his claim be equal in amount to the sum bid, would the court notwithstanding order him to pay the money into court, so that it might be applied to the older lien? We cannot think that to do so would be either just or legal; as if the amount was not sufficient to extinguish the prior lien, the elder judgment creditor might again sell, and thus the first purchaser would lose his property, his debt, and the amount paid into court. But if a levy and sale be absolutely void as to the older creditor, how can he claim the benefit of it? Being void as to him, it must also be unproductive. If he can claim the benefit of a sale, it surely must be on the ground of protecting his prior lien. This is undoubtedly the reason which gave rise to the appropriation of money made under execution. It was a rule of policy adopted by the courts for the purpose of protecting purchasers at sheriff's sales. The reason of the rule does not hold here, and neither can the rule itself. The court, therefore, evidently erred in appropriating money which had been made by a sale under the execution of the plaintiffs in error to the payment of older judgments, which were not at all affected by that sale.

If the sheriff had levied all the executions, as he should have done, then if a doubt had arisen in reference to the rights of parties, it would have been proper for the court to have made the appropriation.

The judgment must be reversed, and the cause remanded. '